[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 9, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13499
Non-Argument Calendar

_____

Agency Nos. A97-925-671
A97-925-672

ORLANDO CASTELLANOS,
CARMENZA GABY CASTELLANOS,
DAVID ALEJANDRO PENA-OROZCO,
DIEGO FERNANDO CASTELLANOS,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 9, 2007)**

Before ANDERSON, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Orlando Castellanos, on behalf of himself, his wife, Carmenza Gaby Castellanos, and their two sons, David Alejandro Pena Orozco and Diego Fernando Castellanos, all citizens of Venezuela, petitions for review of the order of the Board of Immigration Appeals that affirmed the decision of an Immigration Judge to deny his application for asylum and withholding of removal under the Immigration and Nationality Act and relief under the United Nations Convention Against Torture, 8 U.S.C. § 1231(b)(3). The Board of Immigration Appeals denied Castellanos's application because it concluded that he had not suffered past persecution and did not have a well-founded fear of future persecution if he returned to Venezuela because relocation was possible. Because substantial evidence supports the decision of the Board of Immigration Appeals, we deny the petition.

## I. BACKGROUND

On May 19, 2004, Castellanos and his family were served with notices to appear for having remained in the United States for a period longer than authorized. On October 22, 2004, Castellanos and his family appeared before an Immigration Judge, admitted the allegations in the notices to appear and conceded removability. Castellanos requested asylum, withholding of removal, and relief under the Convention Against Torture.

2

Castellanos was the only witness at the hearing before the Immigration Judge. Castellanos testified that he was born in Venezuela and had last entered the United States on August 18, 2003. He testified that he had come to the United States to seek asylum because he had been persecuted in Venezuela on account of his political opinion. In support of his claim for asylum, Castellanos testified that he was a businessman involved in international trade and he openly opposed the regime of Hugo Chavez. Castellanos testified that as a result of his participation in marches, strikes, and meetings in opposition to the Chavez government, he was persecuted by members of the Bolivarian Circles, which Castellanos testified were pro-Chavez organizations.

The alleged persecution about which Castellanos testified consisted of three incidents. First, during a national strike in which Castellanos participated that began in December 2002 and lasted for 63 days, Castellanos received threatening telephone calls from members of the Bolivarian Circles who stated that Castellanos would have to change his political ways or face the consequences. Castellanos testified that he received these calls almost daily during December and that he understood the consequences to be death. Second, on January 8, 2003, Castellanos testified that his business was vandalized by members of the Bolivarian Circles. The vandals attempted to force Castellanos to open the business during the strike, called Castellanos a traitor, and referred to him by name. The vandals did not

3

physically harm Castellanos because his neighbors intervened. Third, Castellanos testified that, on August 10, 2003, he was intercepted on his way home from the office by three armed members of the Bolivarian Circles. He was forced to exit his car, was beaten, and was warned to cease his activities or he would be killed. On each occasion, Castellanos's harassers threatened that Castellanos's family would also pay the consequences. Although Castellanos reported the incidents to the authorities, no action was taken. He came to the United States eight days after the August 10, 2003, beating.

The Immigration Judge denied the application for relief. The Immigration Judge specifically found that Castellanos had not suffered persecution in the past and did not have a well-founded fear of persecution if he returned to Venezuela. On appeal, the Board of Immigration Appeals affirmed the decision of the Immigration Judge. In a separate opinion, the Board concluded that Castellanos had not suffered past persecution and had not established that he could not relocate within Venezuela.

## II. STANDARD OF REVIEW

We review only the decision of the Board of Immigration Appeals, except to the extent that it expressly adopts the opinion of the Immigration Judge. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Insofar as the Board adopts the reasoning of the Immigration Judge, we also review that decision. See

4

<u>Prado-Gonzalez v. INS</u>, 75 F.3d 631, 632 (11th Cir. 1996). We review factual determinations under the substantial evidence test. <u>Sepulveda v. U.S. Att'y Gen.</u>, 401 F.3d 1226, 1230 (11th Cir. 2005). We must affirm the decision of the Board of Immigration Appeals if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>Id.</u> "Under this highly deferential standard of review, the [Board]'s decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." <u>Id.</u> (citation omitted).

### III.  DISCUSSION

Castellanos makes two arguments on appeal. He argues first that he established past persecution on account of a protected ground. He argues second that he established a well-founded fear of persecution if he returned to Venezuela. Each argument fails.

"[P]ersecution is an extreme concept, requiring more than few isolated incidents of verbal harassment or intimidation." Id. at 1231 (quotation omitted). "[M]ere harassment does not amount to persecution." <u>Id.</u> The Board of Immigration Appeals concluded that the incidents of which Castellanos complained did not rise to the level of persecution. To grant Castellanos's petition on the ground that he established past persecution, we must conclude that the evidence compels the opposite conclusion. <u>See id.</u> at 1230.

5

Substantial evidence supports the conclusion of the Board of Immigration Appeals that Castellanos did not suffer past persecution. The threatening telephone calls and vandalism to Castellanos's business do not amount to more than harassment. Castellanos was not injured, and he admitted that "the events were not that bad." Although Castellanos suffered a physical attack and injury, the record does not compel the conclusion that this attack amounted to persecution. Substantial evidence supports the conclusion of the Board of Immigration Appeals that this one incident of abuse was not so severe that it required medical attention.

Substantial evidence also supports the conclusion of the Board of Immigration Appeals that Castellanos did not have an objectively reasonable fear of future persecution because Castellanos could relocate to another part of Venezuela. See 8 C.F.R. § 208.13(b)(2). Castellanos asserts that he would be persecuted wherever he resided in Venezuela, but there is substantial evidence to the contrary. The record contains evidence that the Bolivarian Circles, which Castellanos alleges were responsible for his mistreatment, are small, autonomous groups who would not have the desire or capability of coordinating efforts to track him throughout Venezuela.

Although the record contains evidence of some national promotion of the Bolivarian Circles through a toll-free number established to disseminate information on forming new groups and an Assistant National Coordinator, the

6

evidence does not compel the conclusion that anyone exercises central control of the Bolivarian Circles. Each Circle is a grassroots organization with typically seven to eleven members led by First and Second Coordinators. There were more than 7000 Circles in 2001. There is even substantial evidence that most Bolivarian Circles are engaged primarily in humanitarian work. The record contains evidence that approximately 200 Bolivarian Circle leaders met on one occasion to rally in support of President Chavez, but that evidence does not compel the conclusion that Castellanos would be unable to relocate in Venezuela. Although the record establishes that Castellanos was mistreated by several members of one or more local Circles, the record does not establish that his "notoriety as an activist would outlast" his lengthy absence from Venezuela such that he would be singled out for persecution wherever he relocated. Sepulveda, 401 F.3d at 1232.

Castellanos's claims for withholding of removal and relief under the Convention Against Torture also fail. Because Castellanos did not "meet the 'well-founded fear' standard for asylum, it is a fortiori that he cannot meet the withholding of removal standard." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004) (citations omitted). Likewise, Castellanos did not establish that it was "more likely than not" that he would be tortured if he were returned to Venezuela. 8 C.F.R. § 208.16(c)(2).

**PETITION DENIED.**

7