**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0525n.06
Filed: August 27, 2008

**No. 07-3328**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

SAID AL ROUMY,

     Petitioner-Appellant,

v.

MICHAEL B. MUKASEY, Attorney General of
the United States,

     Respondent-Appellee.

ON PETITION FOR REVIEW FROM AN
ORDER OF THE BOARD OF
IMMIGRATION APPEALS

_____/

BEFORE:    COLE and CLAY, Circuit Judges; and RUSSELL, District Judge.[*]

**CLAY, Circuit Judge.** Petitioner Said Al Roumy seeks review of the Board of Immigration

Appeals' ("BIA") February 20, 2007 decision denying Al Roumy's motion to reopen immigration

proceedings regarding Al Roumy's application for withholding of removal pursuant to 8 U.S.C. §

1231(b)(3) and relief under the Convention Against Torture. Al Roumy claims that the BIA erred

in denying his motion to reopen because changed country conditions justified his untimely filing and

that the ineffective assistance of counsel prevented Al Roumy from presenting his case to the

immigration judge. For the reasons that follow, we **DENY** Al Roumy's petition for review.

---

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of
Kentucky, sitting by designation.

## BACKGROUND

Petitioner Said Al Roumy is a native and citizen of Lebanon. In his application for withholding of removal and his testimony before the immigration judge, Al Roumy explained his background and entry into the United States as follows: Al Roumy was born in a village in the south of Lebanon but lived in Beirut until he came to the United States. In Lebanon, both Al Roumy and his family faced persecution from Hezbollah. Al Roumy's brother worked for a foreign car company until he was killed in 1983 by a car bomb. Al Roumy believes that the bomb was planted by Hezbollah to retaliate against his brother for his brother's links with foreigners. In 1989 or 1990, Al Roumy was detained by Hezbollah for three days because the group wanted Al Roumy to work with them and to stop associating with members of the South Lebanon Army ("SLA"), a rival to Hezbollah. Al Roumy was only released after he promised to help Hezbollah.

After Al Roumy's release, Hezbollah continued to harass and threaten Al Roumy whenever he visited his village in the south of Lebanon. In 1995 or 1999, Hezbollah burned his house in the village, and Al Roumy stopped traveling to southern Lebanon. Hezbollah consolidated its power in the south in 2000 when Israeli military forces pulled out of southern Lebanon and the SLA disbanded. As a result, Al Roumy feared for his life and decided to leave Lebanon for the United States. Because there were no American embassies in Lebanon, Al Roumy traveled to Cyprus to apply for a visa. After securing the visa, Al Roumy returned to Beirut, and in October 2000 he left for the United States where he remained even after his visa expired in October 2001. Al Roumy's case came to the attention of immigration authorities after he registered in compliance with post-September 11th special registration requirements.

Removal proceedings were initiated against Al Roumy on December 19, 2002 with the issuance of a notice to appear alleging that Al Roumy had overstayed his visa. On February 4, 2005, Al Roumy submitted an application for relief under the Convention Against Torture and withholding of removal pursuant to 8 U.S.C. § 1231(b)(3). A hearing was held before an immigration judge on September 23, 2005 at which Al Roumy testified regarding his fear of persecution and torture in Lebanon based upon his political opinion. At the hearing, Al Roumy was represented by a non-lawyer who was accredited by the BIA to practice before the immigration court.

In addition to his testimony, Al Roumy supported his claims with the death certificate of his brother and an unsworn letter from his sister claiming that Al Roumy's brother had been killed by Hezbollah and that Hezbollah was pursuing Al Roumy. The immigration judge questioned the authenticity of the death certificate because no original had been produced and because the blanks for the cause of death and name of spouse were not filled out. Without explaining the basis for his knowledge, Al Roumy claimed that the failure to list this information on death certificates is common in Lebanon. The immigration judge also challenged the absence of additional corroboration of Al Roumy's claims. He asked why Al Roumy's sister, who was a long-time resident of the United States, did not testify at the hearing. The immigration judge also noted that there were no statements from Al Roumy's wife or his mother who supposedly had heard Hezbollah members asking about Al Roumy's whereabouts. In response, Al Roumy claimed that he did not realize that such corroboration was needed despite the fact that his representative had sent him a letter suggesting that he obtain corroborating evidence.

The immigration judge denied Al Roumy's application for withholding of removal in an oral decision announced on the day of the hearing. Citing inconsistencies between Al Roumy's testimony and his application for withholding of removal, the immigration judge found Al Roumy incredible. The immigration judge specifically noted Al Roumy's failure to mention in his application or during direct examination the fact that Hezbollah members burnt his house down. The negative credibility finding was also based on Al Roumy's inability to recollect the year of his detention by Hezbollah, Hezbollah's failure to force Al Roumy to work with them for the ten years following Al Roumy's alleged detention, Al Roumy's inconsistent and vague testimony regarding his residence and work history in Lebanon, and Al Roumy's inconsistent testimony regarding the adoption of his deceased brother's daughter.

In addition to inconsistencies in Al Roumy's testimony, the immigration judge found that Al Roumy had failed to present corroborating evidence for vital aspects of his claim and that the scant corroboration provided was unhelpful. Discounting Al Roumy's testimony, the immigration judge found that Al Roumy had not proven that he had any problems with Hezbollah. The immigration judge also noted that country reports indicated that Hezbollah had not retaliated against former SLA members or individuals who collaborated with Israel. The immigration judge came to the ultimate conclusion that due to the incredibility of Al Roumy's testimony and corroborating documents, Al Roumy had failed to prove that it was more likely than not that he would be subject to persecution or torture if removed to Lebanon. As a result, the immigration judge ordered Al Roumy removed to Lebanon.

Al Roumy appealed the immigration judge's order to the BIA at which time attorney George P. Mann began representing Al Roumy. Initially, the BIA dismissed his appeal as untimely because Al Roumy's notice of appeal was received on October 31, 2005, after the thirty-day appeals period had expired. Al Roumy filed a motion to reconsider in which he explained that the delay in the delivery of his notice of appeal was caused by a mistake on the part of UPS. On August 28, 2006, the BIA granted Al Roumy's motion to reconsider but denied his appeal on the merits, rejecting Al Roumy's claims that the immigration judge erred by failing to grant him a continuance and by finding him incredible. The BIA found that Al Roumy had not requested a continuance to procure additional corroborating evidence and that the immigration judge did not clearly err in concluding that Al Roumy was incredible. The BIA concluded that the immigration judge's credibility finding was supported by Al Roumy's "failure to provide consistent and detailed testimony regarding his fear of return to Lebanon." (J.A. 238.)

On December 14, 2006, Al Roumy filed a motion to reopen the BIA's August 28, 2006 decision. The BIA denied this motion because it was filed more than 90 days after the previous decision and was thus untimely. Despite Al Roumy's evidence of the growing power of Hezbollah in Lebanon, the BIA determined that the evidence submitted did not prove the existence of materially changed circumstances such that the 90-day filing deadline was inapplicable. The BIA also found unpersuasive Al Roumy's claim that he was prejudiced by ineffective assistance of counsel. Following the denial of his motion to reopen, Al Roumy filed a timely petition for review.

**DISCUSSION**

**I.**

This Court reviews the BIA's denial of a motion to reopen for abuse of discretion. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). Because the BIA has broad discretion in deciding whether to reopen proceedings, the party seeking reopening "bears a heavy burden." *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008) (quoting *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007)). The BIA abuses its discretion when it "offers no 'rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* (alterations in original) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)). Despite this deferential standard of review, we may not affirm the BIA on a basis it has not articulated in its decision. *Mirza v. Gonzales*, 148 F. App'x. 467, 469 (6th Cir. 2005).

Al Roumy claims that in his motion to reopen he demonstrated that country conditions in Lebanon had changed materially and that as a result the BIA abused its discretion by denying his motion to reopen as untimely. Generally, a motion to reopen must be filed "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). An exception to this time limit is made if the motion to reopen is "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8.C.F.R. § 1003.2(c)(3)(ii). In order to justify the reopening of proceedings based on changed country conditions, the movant "cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Harchenko v.*

*I.N.S.*, 379 F.3d 405, 410 (6th Cir. 2004) (quoting *Dokic v. INS*, No. 92-3592, 1993 WL 265166, at *5 (6th Cir. July 15, 1993)).

The BIA found that Al Roumy's motion to reopen was filed more than 90 days after the BIA's decision affirming the immigration judge's denial of withholding of removal. In support of his motion, Al Roumy presented additional evidence in an attempt to demonstrate materially changed circumstances in Lebanon. Al Roumy included an affidavit from himself reiterating his claim of persecution and a letter from his mother stating that in October 2006 Hezbollah members asked when Al Roumy would be returning to Lebanon. Al Roumy also included voluminous amounts of news reports and commentary regarding Israel's invasion of Lebanon and the resulting rise in Hezbollah's power in southern Lebanon. The BIA found the evidence lacking because "[t]he respondent has not contended that the nature of any persecution he reportedly fears has changed in character, but only that it has varied in scope and degree." (J.A. 2.) As a result, the BIA found that the changed country conditions exception to the 90-day filing requirement did not apply to Al Roumy's motion to reopen. Al Roumy challenges this conclusion on numerous grounds, claiming that the BIA failed to follow its own procedures in evaluating his claim and that the reasoning of the BIA's opinion is faulty.

Al Roumy claims that the BIA abused its discretion because the BIA failed to follow its own rules in determining whether changed country conditions excuse Al Roumy's untimely filing. To support this argument, Al Roumy makes the allegation that "[t]here is no indication that the BIA engaged in any meaningful reviewable analysis of the documentary evidence provided by petitioner." (Pet'r Br. 16.) Although the BIA must provide a rational basis for its denial of a motion to reopen,

this Court does not require that the BIA "list every possible positive and negative factor in its decision." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (quoting *Rodriguez-Rivera v. INS*, 993 F.2d 169, 170-71 (8th Cir.1993)). The BIA must simply "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142-43 (5th Cir. 1984)).

In the instant case, the BIA analyzed Al Roumy's changed country conditions argument as follows:

> The evidence submitted in support of reopening includes articles concerning country conditions in Lebanon and evidence from the respondent and his family. The respondent has not contended that the nature of any persecution he reportedly fears has changed in character, but only that it has varied in scope and degree. The evidence submitted does not establish that the respondent is entitled to an exception to the filing requirements for reopening based on an asylum claim arising from materially changed circumstances in Lebanon.

(J.A. 2.) The BIA's decision, though brief, explains the evidence presented by Al Roumy, explains why the evidence is unpersuasive, and concludes that Al Roumy has not shown changed country conditions that would excuse his untimely filing. Thus, the decision demonstrates that the BIA "has heard and thought and not merely reacted." *Scorteanu*, 339 F.3d at 412.

In his challenge to the reasoning of the BIA's decision, Al Roumy focuses on the BIA's statement that additional evidence was unhelpful because Al Roumy claimed no change in the "character" of persecution but only in the "scope and degree" of persecution. (J.A. 2.) Al Roumy argues that this language demonstrates that the BIA made a false and unwarranted distinction in determining what type of change in country conditions would warrant an untimely motion to reopen. Viewed in isolation this language could be troubling; however, viewed in light of the entirety of Al

8

Roumy's case, the BIA has provided a rational explanation for its decision. Certainly, as Al Roumy argues, there is no general requirement that a claim of changed country conditions must establish a change in the "character" of persecution as opposed to its "scope and degree." *See Harchenko*, 379 F.3d at 410 (requiring a showing of materially changed conditions demonstrating an individualized fear of persecution). However, in the instant case, the BIA found that Al Roumy's claim of persecution by Hezbollah was not credible. Therefore, additional evidence that Hezbollah had gained power in Lebanon, even though it expanded the "scope and degree" of Al Roumy's allegations of persecution, was merely cumulative of the evidence presented at Al Roumy's hearing and insufficient to require the reopening of proceedings before the BIA. *See Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2005) ("[C]umulative evidence that conditions asserted in the original application 'persisted' is not evidence of changed circumstances." (citing *Betouche v. Ashcroft*, 357 F.3d 147, 152 (1st Cir. 2004)).

The addition of Al Roumy's mother's letter claiming that Hezbollah members were asking about Al Roumy does not change the cumulative nature of the evidence presented. At his hearing before the immigration judge, Al Roumy had already testified that his mother was aware of such inquiries. Although the letter could be seen as making Al Roumy's claim regarding these inquiries more believable, the BIA acted within its discretion in determining that this additional evidence does not demonstrate "a real threat of individual persecution."[1] *Harchenko*, 379 F.3d at 410. Because

---

[1]Al Roumy also relies upon dicta in *Abdallah v. Gonzales*, 193 F. App'x 408 (6th Cir. 2006), to argue that changed country conditions excuse his untimely motion to reopen. In *Abdallah* this Court denied a Lebanese citizen's petition for review of the BIA's denial of asylum, and this Court noted that Abdallah could file a motion to reopen based on changed country conditions due to dramatic changes in Lebanon. *Abdallah*, 193 F. App'x at 412. Although this Court suggested that

the BIA did not abuse its discretion by denying Al Roumy's motion to reopen, this Court may not overturn the BIA's determination that Al Roumy's allegations of changed country conditions were insufficient to excuse his untimely filing.

## II.

Al Roumy further challenges the BIA's decision on due process grounds, claiming that he was entitled to an individualized hearing on changed country conditions in Lebanon. Pursuant to the Fifth Amendment of the United States Constitution, aliens are entitled due process of the law in immigration proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Even a discretionary decision is constrained to some extent by the requirements of due process such that "some level of individualized determination" is required. *Vata v. Gonzales*, 243 F. App'x 930, 949 (6th Cir. 2007) (quoting *Flores*, 507 U.S. at 313). *But see Ramirez v. Gonzales*, 247 F. App'x 782, 786 (6th Cir. 2007) (holding that due process was not implicated in the denial of motion to reopen because an immigrant has no due process right in a discretionary decision). Claims of a violation of due process in immigration proceedings are reviewed *de novo*. *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006).

For this proposition, Al Roumy cites cases that hold that immigrants are entitled to full and fair deportation hearings. *See, e.g., Amadou v. INS*, 226 F.3d 724, 727 (6th Cir. 2000) (holding that an asylum applicant was deprived of the due process guarantee of a full and fair hearing due to an

---

changed country conditions in Lebanon could excuse an untimely filing of a motion to reopen, the BIA is not bound by this dicta. *See Haddad v. Gonzales*, 437 F.3d 515, 518 (6th Cir. 2006) (affirming the BIA's denial of a motion to reopen despite an earlier panel's recommendation that Haddad's changed circumstances would justify a motion to reopen).

incompetent interpreter). Al Roumy mistakes his due process right to a full and fair deportation hearing with the process to which he is entitled at the motion to reopen stage. The BIA's consideration of the evidence presented in light of the movant's claim is sufficient to provide "some level of individualized determination" and satisfy due process at the motion to reopen stage. *Vata*, 243 F. App'x at 949. Therefore, Al Roumy's claim that his due process rights were violated by the BIA's failure to conduct a hearing is meritless.

## III.

The BIA refused to grant relief on Al Roumy's claim that his accredited representative[2] rendered ineffective assistance at Al Roumy's hearing before the immigration judge. Because Al Roumy only claimed that ineffective assistance of counsel prejudiced him at his initial withholding of removal hearing and not at the motion to reopen stage, the BIA held that the representative's performance could not explain Al Roumy's late filing and could not be used as a basis for equitable tolling of the filing date for Al Roumy's motion to reopen. In addition, the BIA held that Al Roumy's ineffective assistance argument did not warrant relief because Al Roumy had failed to comply with the requirements of *In re Lozada*, 19 I&N Dec. 637 (BIA 1988) *aff'd*, 857 F.2d 10 (1st Cir. 1988), for giving notice to his appointed representative.

Al Roumy makes no arguments regarding the BIA's finding that Al Roumy's ineffective assistance claim does not excuse the untimeliness of his motion because the alleged ineffective

---

[2]An accredited representative authorized to represent persons in immigration proceedings is a representative of a non-profit organization that has proven to the BIA that it "makes only nominal charges and assesses no excessive membership dues for persons given assistance; and . . . has at its disposal adequate knowledge, information and experience." 8 C.F.R. § 292.2.

assistance occurred during the immigration hearing and not during the filing of the motion to reopen. Instead, Al Roumy argues that the *Lozada* requirements do not apply to his case because he was represented by a non-attorney representative. In response, the government asserts that the application of the *Lozada* factors is not limited to claims of ineffective assistance of licensed attorneys.[3] Although this Court may simply affirm this aspect of the BIA's decision based on the BIA's uncontested holding that Al Roumy's ineffective assistance claim, even if properly substantiated, does not excuse his untimely filing of a motion to reopen, we address Al Roumy's argument regarding *Lozada* below.

As noted above, the Fifth Amendment entitles non-citizens a due process right to a full and fair hearing in deportation proceedings. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). This Court has held that "[i]neffective assistance of counsel in a deportation proceeding will rise to the level of a due-process violation under the Fifth Amendment 'only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Id.* (quoting

---

[3]The government also claims that there is no constitutional right to effective assistance of counsel in immigration proceedings since such proceedings are civil matters for which there is no right to appointed counsel. Although some courts have agreed with this argument, controlling precedent in this Circuit has recognized such a right. *Compare Kalaj v. Gonzales*, 137 F. App'x 851, 855-56 (6th Cir. 2005) (holding that although there is no Sixth Amendment right to effective assistance of counsel, ineffective assistance of counsel can violate a non-citizen's due process rights), *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003) (finding that ineffective assistance of counsel can violate a non-citizen's due process rights during immigration proceedings) *and Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001) (same) *with Mai v. Gonzales*, 473 F.3d 162, 165 (5th Cir. 2006) (questioning the constitutional basis for an ineffective assistance of counsel claim in immigration proceedings) *and Stroe v. INS*, 256 F.3d 498, 503-04 (7th Cir. 2001) (holding that there is no due process right to effective assistance of counsel in immigration proceedings).

*Ramirez-Durazo v. INS*, 794 F.2d 491, 499-500 (9th Cir. 1986)). In order for a movant for reopening to prevail on a claim of ineffective assistance of counsel, he

> is required (1) to file an affidavit stating his agreement with former counsel with respect to the actions to be taken on appeal and what counsel did nor did not represent to the alien in this regard; (2) to show that former counsel was informed of the allegations and was given an opportunity to respond; and (3) to state whether a complaint has been filed with appropriate disciplinary authorities regarding the allegedly ineffective representation.

*Sswajje v. Ashcroft*, 350 F.3d 528, 533 (6th Cir. 2003) (citing *Lozada*, 19 I. & N. Dec. at 639).

Al Roumy claims that it is impossible for him to comply with *Lozada* because he was not represented by an attorney who would be "under the jurisdiction of the local state Bar Association for disciplinary actions." (Pet'r Br. 21.) Al Roumy's claim lacks merit for multiple reasons. First, Al Roumy has not shown that he has complied with the first two *Lozada* factors, which do not depend on the identity of his representative. Second, *Lozada* does not require that a complaint be filed against the representative; instead, "the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not." *Lozada*, 19 I. & N. Dec. at 639. Al Roumy could have explained in his motion that a complaint was not filed because his representative was not a lawyer. Third, the BIA has explicitly required compliance with at least the first two *Lozada* factors when ineffective assistance by an accredited representative has been alleged. *In re Zmijewska*, 24 I. & N. Dec. 87, 93 (BIA 2007). As a result, Al Roumy's challenge to the BIA's decision regarding his ineffective assistance of counsel claim fails.

## CONCLUSION

For the reasons stated above, we **DENY** Al Roumy's petition for review.